**IN THE UNITED STATES COURT**
**OF FEDERAL CLAIMS**

| | |
|---|---|
| R&D DYNAMICS CORPORATION<br>15 Barber Pond Road<br>Bloomfield, Connecticut 06002<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant | FILED UNDER SEAL<br><br>No.: 07-90 C<br>(Judge Hewitt) |

**PLAINTIFF'S REPLY TO THE DEFENDANT'S RESPONSE TO ITS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND RESPONSE TO ITS MOTION TO DISMISS AND IN THE ALTERNATIVE ITS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Respectfully submitted,

William T. Welch (Counsel of Record)
Barton, Baker, McMahon & Tolle, LLP
1320 Old Chain Bridge Road, Suite 440
McLean, Virginia 22101
(703) 448-1810 - Telephone
(703) 448-3336 - Facsimile

Dated: May 3, 2007

## Table of Contents

I. This Court Does Possess Subject Matter Jurisdiction of this Case Because R&D Dynamics is an Interested Party Under the Court's Jurisdictional Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. The Record Does Not Support the Army's Decision to Rank R&D Dynamics 21st Out of 31 Proposals Received. . . . . . . . . . . . . . . . . . . . 7

A. GAO's Decision Has No Bearing On R&D's Claim that the Record Fails to Support its Ranking of 21st Out of 31 Proposals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

B. The Government's Argument that the Record Supports R&D's Ranking is Not Sound. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

C. Exhibit 30 Is Internally Inconsistent and Not Reasonably Based. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

D. Exhibit 29, to the Extent Admissible, Shows that R&D Should Have Been Included Within the First 19 Proposals Funded. . 12

III. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# Table of Authorities

## ***Appellate Court Cases***

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) . . . . . . . . . . . . 6

*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312 (Fed. Cir. 2003)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

## ***Court of Federal Claims Cases***

*AFGE, Local 1482 v. United States*, 258 F.3d 1294 (Fed. Cir. 2001) . . . . . . . . . 2

*Night Vision Corp. v. United States*, 68 Fed. Cl. 368 (2005) . . . . . . . . . . . . . . . . 3

*Northrup Grumman Corp. v. United States*, 50 Fed. Cl. 443 (2001) . . . . . . . . . . 2

## ***Government Accountability Office Cases***

*Arco Mgmt. of Wash., D.C., Inc.*, B-248653, Sept. 11, 1992, 92-2 CPD ¶ 173 . . 4

*Celadon Labs. Inc.*, B-298533, 2006 U.S. Comp. Gen. LEXIS 174 (U.S. Comp. Gen. 2006), 2006 Comp. Gen. Proc. Dec. ¶ 158 . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Deborah Bass Assocs.*, B-257958, Nov. 9, 1994, 94-2 CPD ¶ 180 . . . . . . . . . . . 4

*DNL Properties, Inc.*, B-253614.2, 1993 U.S. Comp. Gen. LEXIS 1043, 93-2 Comp. Gen Dec. Proc. ¶ 301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Intellectual Properties, Inc.*, B-280803.2, 99-1 Comp. Gen. Proc. Dec. ¶ 83, 1999 U.S. Comp. Gen. LEXIS 75 (U.S. Comp. Gen. 1999) . . . . . . . . . . . . . . . . . . . 4, 5

*R&D Dynamics Corp*. B-298766, 2006 U.S. Comp. Gen. LEXIS 208, 2006 Comp. Gen. Proc. Dec. ¶ 195 (U.S. Comp. Gen. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 8

S&M Prop. Mgmt., B-243051, June 28, 1991, 91-1 CPD ¶ 615 . . . . . . . . . . . . . . . 5

**IN THE UNITED STATES COURT**
**OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| R&D DYNAMICS CORPORATION<br>15 Barber Pond Road<br>Bloomfield, Connecticut 06002<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant | ) | FILED UNDER SEAL<br><br><br><br><br>No.: 07-90 C<br>(Judge Hewitt) |

**PLAINTIFF'S REPLY TO THE DEFENDANT'S RESPONSE TO ITS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND RESPONSE TO ITS MOTION TO DISMISS AND IN THE ALTERNATIVE ITS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Plaintiff, R&D Dynamics Corporation ("R&D"), pursuant to U.S. Court of Federal Claims Rule 52.1 and pursuant to this Court's scheduling order presents the following reply to the Government's response to R&D's Motion for Judgment on the Administrative Record and response to the Government's Motion to Dismiss and in the alternative Motion for Judgment on the Administrative Record.

## I. This Court Does Possess Subject Matter Jurisdiction of this Case Because R&D Dynamics is an Interested Party Under the Court's Jurisdictional Statutes.

The Government argues in this case that this Court lacks jurisdiction over R&D's protest because R&D lacks standing before this Court under the Tucker Act. The Government's argument here is not well taken.

The Competition in Contracting Act defines an "interested party" as "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2) (2006), as discussed in *Northrup Grumman Corp. v. United States*, 50 Fed. Cl. 443, 456 (2001). The Federal Circuit has relied on various factors in determining this interest, including, but not limited to, whether a contractor has (1) submitted a proposal; (2) withdrawn from the pertinent procurement; or (3) rated below second among prospective bidders. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334 (Fed. Cir. 2001).

Generally speaking, a protester is required to show that its "direct economic interest would be affected by the award of the contract or by failure to award the contract." *AFGE, Local 1482 v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001). A protester shows that its "direct economic interest" has been affected where the allegations show that the Government's actions or inactions have deprived the protester of a "substantial chance" of obtaining the contract award, assuming that the protester's allegations are true. *Info. Tech. & Applications Corp. v. United*

*States, 316 F.3d 1312, 1319 (Fed. Cir. 2003).* Also, for its "direct economic interest" to be affected, the Government's action or inaction must have actually harmed or prejudiced the protester's chance for award. *Info. Tech.*, 316 F.3d at 1319.

This Court has found previously that a competitor in an SBIR competition can establish standing under the Court's jurisdictional statutes where it alleges sufficient facts that would support, if true, the finding that the protester's proposal would have been in line for funding under the SBIR procedures. *Night Vision Corp. v. United States*, 68 Fed. Cl. 368, 392 (2005).

In *Night Vision*, the protester protested the denial of its SBIR Phase III award. In the protest, the protester alleged facts that, if true, would have resulted in the protester's proposal having been ranked first in the applicable group of proposals, thus putting it in line for award. As this Court noted in the *Night Vision* case, [s]ince the plaintiff alleges that it was unreasonably denied the first ranking, assuming plaintiff's bid protest is successful, plaintiff would be prejudiced and would have a substantial chance at being awarded the contract. *Id., citing Info. Tech., 316 F.3d at 1319* (protestor established standing "because it has a greater than an insubstantial chance of securing the contract if successful on the merits of the bid protest").

The GAO also has consistently found that SBIR protesters have standing to protest decisions not to fund Phase I, Phase II, or Phase III SBIR awards. GAO reviews such protests objecting to agency actions regarding the SBIR program and has repeatedly recognized in those decisions that "agencies have broad discretion

to determine which proposals will be funded under the SBIR program." *Deborah Bass Assocs.*, B-257958, Nov. 9, 1994, 94-2 CPD ¶ 180 at 3. GAO has noted that the contracting agency had broad discretion" regarding its actions, but that discretion was nevertheless subjected to the test of reasonableness. *Celadon Labs. Inc.*, B-298533, 2006 U.S. Comp. Gen. LEXIS 174 (U.S. Comp. Gen. 2006), 2006 Comp. Gen. Proc. Dec. ¶ 158; *Intellectual Properties, Inc.*, B-280803.2, 99-1 Comp. Gen. Proc. Dec. ¶ 83, 1999 U.S. Comp. Gen. LEXIS 75, 11-12 (U.S. Comp. Gen. 1999). An Agency's discretion, though broad, is not unfettered, and continues to be subject to the test of reasonableness. *Id*. Where the Agency's SBIR decisions are not reasonably supported by the record, the GAO will sustain the protest as being unreasonable, arbitrary, and capricious. *Id*.

One way that GAO has found SBIR decisions to be unreasonable, arbitrary and abuses of discretion, is where the record does not contain sufficient contemporaneous documentation, Moreover, the GAO has sustained protests where the contemporaneous record fails to include adequate documentation to support the Agency's decision. In *DNL Properties, Inc.*, B-253614.2, 1993 U.S. Comp. Gen. LEXIS 1043, 93-2 Comp. Gen Dec. Proc. ¶ 301, the GAO noted that an agency must have an adequate written record to support its selection decision. *Arco Mgmt. of Wash., D.C., Inc.*, B-248653, Sept. 11, 1992, 92-2 CPD ¶ 173. The Federal Acquisition Regulation (FAR) requires agencies to document their evaluation of proposals and their selection decisions so as to show the relative differences

between proposals, their weaknesses and risks, and the basis and reasons for the selection decision, FAR § §15.608 and 15.612(d)(2); see also S&M Prop. Mgmt., B-243051, June 28, 1991, 91-1 CPD ¶ 615.

The record shows in this case that R&D submitted a Phase II proposal and was otherwise eligible for a Phase II award under this SBIR program. (See Tabs 4 and 7). R&D noted in its Statement of Facts and in its Motion for Judgment on the Administrative Record that the agency evaluation documents that are purported to support the Agency's decision in this case were not included in the record at the time that R&D filed its Motion for Judgment on the Administrative Record. The record did not show that the agency made any contemporaneous evaluation, in writing, of the R&D proposal as required by procurement regulations. The purported Tier I evaluation comments located at Tab 10 (A156) of the Administrative Record are dated June 28, 2006, well after the award decision. The Source Selection Board A2 2433 Tier II Evaluation comments, located at Tab 11 (A160), are dated September 14, 2006, also well after the award decision. In addition, R&D's Motion argued that the record was totally devoid of any means of ranking the R&D proposal as 21st out of 31 proposals eligible for available funding. (Motion, pp. 5-6).

Like the protester in *Intellectual Properties, Inc.*, R&D has standing by virtue of its allegations that the written record fails to provide any documentation that could reasonably and contemporaneously support the Agency's decision. Moreover, to the extent that the record contained evaluation documents of the R&D proposal, these

documents constitute *post hoc* rationalizations that should be afforded limited importance in the Court's analysis. See *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419 (1971). Therefore, R&D argued that the administrative record on its face is insufficient to support this award decision. In addition, R&D has standing by virtue of its claim that, had it been properly evaluated, it would have been found to be excellent and would have been ranked at least in the top 19 proposals, thus eligible for one of the 19 slots funded by the Agency. (See in particular, Plaintiff's Motion, pp. 4-5, demonstrating that the Agency's decision to rank R&D's otherwise excellent proposal outside of the top 19 proposals was not supported by the record.)

In addition, the evaluation comments and scoring discussed below show that, had technical area chief followed the recommendation of the initial technical team and had the technical area chief not included a lower scoring proposal within those funded in this area, then R&D's proposal would have been included within the 19 proposals funded for this technical area. (In particular, see discussion below at pp. 10-12).

For this reason, this Court should find that R&D has met the requirement to demonstrate that it has standing to pursue this protest and move to the merits of this case.

## II. The Record Does Not Support the Army's Decision to Rank R&D Dynamics 21st Out of 31 Proposals Received.

### A. GAO's Decision Has No Bearing On R&D's Claim that the Record Fails to Support its Ranking of 21st Out of 31 Proposals.

The Government argues that the prior GAO decision denying the R&D GAO protest is a sufficient basis, if found to be reasonable, to support denying the R&D Court of Federal Claims protest. (Def. Motion 12-14). The Government has failed to understand the scope of R&D's Court of Federal Claims protest.

The heart of R&D's protest is that the administrative record, at the time that R&D filed its Motion for Judgment, did not include (1) contemporaneous records to support the evaluation of R&D's proposal and (2) did not include any basis, contemporaneous or not, to support the ranking of the R&D proposal as 21st out of 31 proposals, and thus outside of the range of proposals to be funded. (See Plaintiff's Motion for Judgment on the Administrative Record, pp. 5-11).

The GAO's decision to deny R&D's protest does not provide any support for R&D's challenge to its ranking outside of the funding band because the GAO opinion did not address the merits of that protest allegation. The GAO decision addressing R&D's complaint as to its overall ranking outside the funding band dismissed as untimely this R&D allegation as not having been included within the scope of the original Agency protest, thus untimely as a GAO protest of the Agency's decision to deny the Agency protest. As such, the GAO found this allegation to be outside of

GAO's jurisdiction and thus GAO did not consider this matter on the merits. (See Complaint, ¶ 44; *R&D Dynamics Corp*. B-298766, 2006 U.S. Comp. Gen. LEXIS 208, 2006 Comp. Gen. Proc. Dec. ¶ 195 (U.S. Comp. Gen. 2006), p. 8 n.2). Therefore, because the GAO's timeliness rules relating to Agency protests are not relevant to and otherwise binding on this Court, the GAO's denial of this R&D protest ground has no authority at all.

### B. The Government's Argument that the Record Supports R&D's Ranking is Not Sound.

The Government in its Cross-Motion for Judgement argues that R&D filed this protest "because it believes that its Phase II proposal is excellent, and that it is entitled to receive research and development funding regardless of the Army's evaluation and assessment of the proposal." (Def. Motion, p. 14). This is simply not true.

R&D has consistently argued, both at GAO and before this Court, that the administrative record does not show that the agency made a contemporaneous evaluation, in writing, of the R&D proposal as required by procurement regulations. The purported Tier I evaluation comments located at Tab 10 (A156) of the Administrative Record are dated June 28, 2006, well after the award decision. The Source Selection Board A2 2433 Tier II Evaluation comments, located at Tab 11 (A160), are dated September 14, 2006, also well after the award decision.

In addressing this argument, the Government provides the following argument:

> R&D Dynamics first argues that the record does not show that the Army made a contemporaneous evaluation of its SBIR Phase II proposal. *Id*, at 5-6. R&D Dynamics is mistaken. The four contemporaneous evaluations, dated April 18, 2006, are included in the administrative record. AR 316-326.[1]

(Def. Motion, p. 14-15). However, the Government fails to note that the pages of the Administrative Record referred to (AR 316-326), were actually added by the Government after R&D filed its Motion for Judgment on the Administrative Record, and thus cannot reasonably be cited as omissions or matters that were overlooked by R&D in this case.

Since R&D filed its Motion for Judgement on the Administrative Record, the Government has proposed to add two exhibits to the Administrative Record (Exhibits 29 and 30, AR 316-326) that purport to support the Army's contemporaneous decision to rank the R&D proposal outside of the funding level for Phase II proposals. Exhibit 29 does not appear to have been cited anywhere in the Government Cross-Motion for Judgment on the Administrative Record. Exhibit 29 includes nothing but numerical scores and does not include any actual evaluation, discussion, or reasoned ranking of the proposals beyond tallying the numbers. AR315. As such, it could not form the basis of any award decision. The proposed

[1]The Government is mistaken that the all four evaluations located at Tab 30 are dated April 18, 2006. In fact, the first two are dated April 18, the third is dated May 3, 2006, and the fourth is dated June 1, 2006. See Tab 30 at AR318, AR320, AR324, and AR326.

Exhibit 30 is discussed only once by the Government, in the paragraph quoted above.

R&D objects to the late admission of these exhibits. These exhibits were never part of the administrative record before GAO and were never identified as being contemporaneous documentation of the evaluation and ranking of the R&D proposal, although R&D objected repeatedly during the GAO protest and the initial parts of this protest that the record was not properly documented. For this reason, R&D requests that these exhibits be omitted from the Administrative Record or that R&D be offered sufficient time for discovery to examine the authenticity and foundation of these documents.

**C. Exhibit 30 Is Internally Inconsistent and Not Reasonably Based.**

To the extent that this Court accepts as authentic and admissible Exhibit 30 to the administrative record, R&D believes that Exhibit 30 shows that the R&D evaluation was inconsistent and unreasonable.

Exhibit 30 purports to be four separate evaluations of the R&D Phase II proposal (AR 316-326). The first three evaluations appear to be the initial technical team evaluations – the first two dated April 18, 2006 and the third dated May 3, 2006 (AR 316-324). The first two evaluations appear to be individual team member evaluations (AR 316-320) and the third evaluation appears to be the Team Chief's evaluation (AR321-324). The average score of the first three evaluations is 96 out

of a possible 100 points, which would put it very close to the 98-100 range of the 19 proposals funded.[2] (See Exhibit 29, AR 315).

The final evaluation included in Exhibit 30, dated June 1, 2006, appears to be the evaluation of the Technical Area Chief ("TAC"). The TAC's evaluation score is 90 out of 100. Although the TAC's score is considerably lower than the initial evaluators' scores, the TAC reportedly agrees with the initial evaluation and does not provide any reasons or other justification to support its lower numerical score. (AR 325-26). The TAC reports that he"concur[s] with the strengths and weaknesses of the previous evaluators" for each of the three evaluation criteria. (A160). But overall the TAC finds that "the proposal is judged to be of high quality, but not of the highest quality when all evaluation criteria are considered." *Id*. In support of this conclusion, the TAC cites a few of the alleged weaknesses found by the original evaluators with no recognition or balancing discussion of the relative strengths. Moreover, it provides no basis lowering the point score from an average 96 to a 90. In addition, it provides no discussion of the relative strengths or weaknesses of all the proposals in the propulsion area and no basis for ranking R&D Dynamics as 21st out of 31 propulsion technology proposals. As such, the record demonstrates that R&D's

---

[2]As discussed in more detail below, for some unknown and unexplained reason, proposal A2-2399 is included in the top 19 proposals funded for this technical area. But, proposal A2-2399 received a total score of only 85. If you exclude proposal A2-2399, which was rated 85 out of 100 and if you ranked the R&D proposal at 96, as the initial technical evaluation team recommended, then R&D would be the 19th or the last proposal in line for funding.

evaluation and its overall ranking is not supported by the record. As such, it is thereby arbitrary and capricious and in violation of procurement laws and regulations.

**D. Exhibit 29, to the Extent Admissible, Shows that R&D Should Have Been Included Within the First 19 Proposals Funded.**

Exhibit 29 purports to be the final ranking of the proposals for the technical area that included the R&D proposal. (AR 315). However, this ranking, as noted above, is not explained or discussed in any reasoned analysis. Moreover, this ranking appears to include in the first 19 proposals (the funded proposals) a proposal that is scored an overall 85 points out of 100, well below R&D's initial 96 overall score and also below R&D's final 90 score by the TAC. Not only does the record fail to justify the TAC's reducing R&D's score from 96 to 90, it fails to include any rational basis for the numerical anomaly of including the 85-scored proposal within the funding band. What is clear from the record is that if R&D's initial evaluation score of 96 had been accepted by the TAC and if the 85-scored proposal had not been included within the first 19 proposals, then the R&D proposal would have been included within the first 19 proposals, thus making R&D eligible for funding as the 19th of 19 proposals funded for the technical area. Because the record fails to include any rational basis for reducing R&D's score and because the record fails to include any basis for adding the 85-scored proposal into the funding band, the Agency's decision to deny R&D its Phase II funding is arbitrary, capricious,

and an abuse of the Army's discretion. As such, R&D's protest on this matter should be sustained.

## III. CONCLUSION.

WHEREFORE, R&D respectfully requests the Court to grant the following relief:

(1) Declare that the Army unlawfully evaluated the R&D Phase II proposal and unlawfully ranked it at a level that put it beyond the available funding of the SBIR program;

(2) Declare that R&D should have been ranked higher, thus should have been in line for a Phase II award; and

(3) Order that the R&D proposal be re-evaluated, re-ranked and thus eligible for funding under the current or any subsequent SBIR program.

(4) Grant such other relief as the Court deems appropriate, including but not limited to bid and proposal costs as well as or in addition to attorneys fees and costs for maintaining this action pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 (2006).

Respectfully submitted,

/s/

William T. Welch
BARTON, BAKER, McMAHON & TOLLE, LLP
1320 Old Chain Bridge Road, Suite 440
McLean, Virginia 22101
(703) 448-1810 - Telephone
(703) 448-3336 – Facsimile
Attorney of Record