# In the United States Court of Federal Claims

No. 07-90

(E-Filed under seal: August 30, 2007)[1]

(E-Filed for publication: September 12, 2007)

|  |  |
|---|---|
| R&D DYNAMICS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>    Defendant. | Bid Protest; Motion to Dismiss; Rule 12(b)(1); Cross Motions for Judgment on the Administrative Record, Rule 52.1; Whether Plaintiff's Failure to Obtain SBIR Phase II Award Occurred "in connection with a procurement or a proposed procurement"; 28 U.S.C. § 1491(b)(1)(2000) |

William T. Welch, McLean, VA, for plaintiff.

Delisa M. Sanchez, with whom were Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Director, Donald E. Kinner, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. Daniel Pantzer, Associate Counsel, Protest/Litigation Branch, Office of Command Counsel, U.S. Army Materiel Command, Fort Belvoir, VA, of counsel.

OPINION

HEWITT, Judge

---

[1] This Opinion was filed under seal on August 30, 2007 with the following note: "If any party believes that this Opinion contains protected material that should be redacted before publication, that party shall, by motion to be filed on or before September 6, 2007, request the court that such protected material be redacted. The motion shall indicate the specific protected material as to which redaction is requested and, with respect to each such proposed redaction, the reason(s) for the request." As of September 12, 2007, no request for redaction having been received, the opinion is to be published.

This action comes before the court styled as a post-award bid protest filed by R&D Dynamics Corporation (R&D or plaintiff) seeking declaratory and injunctive relief against the actions of the United States, acting through the Department of the Army (Army, government or defendant).  See Complaint for Injunctive and Declaratory Relief (Complaint or Compl.) 1.  The parties filed cross motions for judgment on the administrative record  pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC), and defendant also moved to dismiss pursuant to Rule 12(b)(1).  For the following reasons, plaintiff's motion is DENIED and defendant's motions are GRANTED in the alternative.

I. Background

In 1982, Congress established the Small Business Innovation Research (SBIR) program to increase small business participation in federal research and development grants.  Compl. 2; Administrative Record (AR) 4; Plaintiff's Statement of Facts (Pl.'s Facts) 1-2; Defendant's Statement of Facts (Def.'s Facts) 1.  The purposes of the SBIR program are:  "1) to stimulate technological innovation; 2) to use small business to meet Federal research and development needs; 3) to foster and encourage participation by minority and disadvantaged persons in technological innovation; and 4) to increase private sector commercialization innovations derived from Federal research and development."  Small Business Innovation Development Act of 1982, Pub. L. No. 97-219, 96 Stat. 217 (codified as amended at 15 U.S.C. § 638).  The Army administers the SBIR program in three phases:  Phase I is a feasibility phase that determines scientific and technical merit; Phase II represents a major research and development effort, resulting in a deliverable prototype, for the proposals selected for Phase I award; and Phase III encourages the award recipients to obtain private sector and/or non-government sources of funding to develop a prototype into a marketable product or service for sale in the military or private sector markets.  15 U.S.C. § 638(e)(4) (2000); AR 13-14, 67.

Phase I and Phase II evaluations are conducted in a similar manner except that Phase II employs a different "process for inviting and receiving proposals" and weighing the evaluation criteria.  AR 25.  The Army solicits proposals and then selects among the proposals based on a two-tiered evaluation process.  Id.  Tier one consists of an evaluation by the Technical Evaluation Teams (TET) which are composed of personnel representing the participating organizations who are most familiar with the topics.  Id.  After a technical assessment, "the TET forwards the best proposal to the second level of review."  Id.  Tier two consists of an evaluation by "a panel of senior level Army scientists and technologists (Technical Area Chiefs – TACs) who review the forwarded proposals from an Army-wide perspective and together as the Source Selection Board

(SSB) recommends which of those merit [Source Selection Authority (SSA)] consideration for funding." Id.

  Plaintiff is a corporation, owned by principal investigator Dr. Giri Agrawal, that conducts work in the area of air foil bearings. Pl.'s Facts 2. Plaintiff currently "has contracts from all major gas turbine manufacturers to develop foil bearings for the next generation of gas turbine engines." Id. at 3. "A few years ago [plaintiff] invented Foil Face Seal technology," which tests later concluded was "a breakthrough technology." Id. Plaintiff "applied for and received a Phase I award on November 16, 2005 for development work on foil face seal technology for advanced gas turbine engines in the amount of $69,999." Id. Because plaintiff successfully completed the Phase I program, it was invited to submit a Phase II proposal. Id. at 5. "On or about April 4, 2006, [plaintiff] submitted its Phase II proposal entitled Foil Face Seal for Advanced Gas Turbine Engines." Id. Plaintiff alleges that in its proposal it demonstrated that its Phase I proposal yielded a "significant success" and "that its Phase II operation would produce a viable commercial product." Id. Plaintiff explains that in its Phase II proposal it described how it "had obtained a private funding commitment from . . . Rolls Royce . . . of $900,000 for [its] Phase II effort" and that it included a letter from Rolls Royce indicating this continued support. Id. at 5-6. "On or about June 12, 2006, the Army notified [plaintiff] that its Phase II proposal was not selected for award." Id. at 6. In a letter dated June 28, 2006, the Army provided plaintiff with a written debriefing that explained that plaintiff's proposal was ranked 21st out of 34 proposals received in the propulsion technology area.[2] Id. Based on available funding for propulsion technology proposals, the Army awarded Phase II awards to the first nineteen propulsion technology proposals. Id. at 7. Plaintiff alleges that "[t]he record does not contain any basis, contemporaneous or not, by which the Army ranked the R&D proposal 24th out of 31 proposals, or in the bottom 26% of the propulsion proposals received." Id. at 7.

---

  [2]In a letter dated June 28, 2006, the Army SBIR Program Manager states that plaintiff's proposal is ranked 21st out of 34 proposals. Administrative Record (AR) 156. However, another document included in the AR appears to rank plaintiff's proposal 24th out of 31 proposals. Id. at 168. In their motions and responsive briefing, the parties refer to both of these documents but do not explain the apparent discrepancy. A document included at Tab 29 of the administrative record contains another merit ranking of the proposals for the propulsion technology area. AR 315. This ranking also places plaintiff's proposal 21st out of 34 proposals. Id. For further discussion of the import of this ranking, see Part III.B; for further discussion of plaintiff's objections to supplementing the administrative record, particularly its objection to Tab 29, see Part III.C.

Plaintiff filed its claim before this court on February 7, 2007.³ Compl. 1. On April 4, 2007, plaintiff filed its motion for judgment on the administrative record and its statement of facts. Plaintiff's Motion for Judgment on the Administrative Record and Memorandum in Support Thereof (plaintiff's Motion or Pl.'s Mot.) 1; see also Pl.'s Facts 1. Defendant filed a motion to dismiss, and in the alternative, a motion for judgment on the administrative record on April 23, 2007. Defendant's Motion to Dismiss, and in the Alternative, Motion for Judgment Upon the Administrative Record, Opposition to Plaintiff's Request for Injunctive Relief, and Response to Plaintiff's Motion for Judgement Upon the Administrative Record (defendant's Motion or Def.'s Mot.) 1; see also Def.'s Facts 1; Defendant's Counter-Statement of Facts (Def.'s Counter Facts) 1. On May 3, 2007, plaintiff filed its response to defendant's motions. Plaintiff's Reply to the Defendant's Response to Its Motion for Judgment on the Administrative Record and Response to Its Motion to Dismiss and in the Alternative Its Motion for Judgment on the Administrative Record (plaintiff's Reply or Pl.'s Reply) 1. Defendant filed its reply on May 10, 2007. Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss, and in the Alternative, Motion for Judgment Upon the Administrative Record and Opposition to Plaintiff's Request for Injunctive Relief (defendant's Reply or Def.'s Reply) 1.

Oral argument was held on May 14, 2007 at the National Courts Building. Order of May 14, 2007. The court issued an order directing the parties to file additional briefing and to supplement the administrative record with additional information. Id. Plaintiff filed Plaintiff's Response in Accordance with Court's Scheduling Order (Pl.'s Post-

---

³On April 19, 2007, defendant filed Defendant's Notice of Filing a Supplement to the Administrative Record. However, at that time, defendant had not yet officially filed a copy of the administrative record with the office of the Clerk of Court. On February 14, 2007, defendant requested leave to file the administrative record on CD-ROM, but the court denied defendant's request, Order of Feb. 15, 2007. Although the court and plaintiff received courtesy paper copies of the administrative record, defendant did not properly file the administrative record with the court. On April 24, 2007, the court directed defendant to file the administrative record in accordance with Appendix C of the Rules of the United States Court of Federal Claims (RCFC). See Order of Apr. 24, 2007. On April 26, 2007, defendant properly filed the administrative record and included two exhibits that were not originally included in the administrative record it first attempted to file. After oral argument, the court ordered defendant to file the required certification of the administrative record and to supplement the record with an affidavit explaining the evaluation process of plaintiff's proposal and with evidence of plaintiff's award of an SBIR Phase I award. Order of May 14, 2007. Defendant responded to the court's order on May 16, 2007, and the requested information was added to the administrative record at Tabs 31 and 32. Defendant's Notice of Filing Pursuant to the Court's May 14, 2007 Order (Def.'s Notice) 1.

Argument Br.) on May 22, 2007.  The court granted defendant's request for enlargement of time, Order of May 14, 2007, and defendant filed Defendant's Response to Plaintiff's May 22, 2007 Post-Argument Brief (Def.'s Post-Argument Br.) on June 5, 2007.

II.    Standards of Review

The Administrative Disputes Resolution Act (ADRA) amendments to the Tucker Act confer jurisdiction on this court

> to render judgment on an action by an interested party objecting <u>to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract</u> or any alleged violation of statute or regulation <u>in connection with a procurement or a proposed procurement</u>.  Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (2000) (emphases added).  The Tucker Act does not expressly define procurement.  See id. § 1491.  However, Congress elsewhere broadly defines procurement as including "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout."  41 U.S.C. § 403(2); see <u>Colorado Dept. of Human Servs. v. United States</u>, 74 Fed. Cl. 339, 348 (2006) (noting the expansive construction of "procurement" but questioning whether a "procurement" exists where "a federal agency does not elect to solicit bids or offers to enter into a <u>contract</u>" (emphasis added)); <u>OTI Am., Inc. v. United States</u>, 68 Fed. Cl. 108, 114 (2005) (noting the definition of "procurement" at 41 U.S.C. § 403(2)).

When ruling on a RCFC 52.1 motion for judgment on the administrative record, the court makes factual findings as if it were conducting trial based upon the administrative record and any subsequent supplementation.  <u>Bannum, Inc. v. United States</u>, 404 F.3d 1346, 1353-56 (Fed. Cir. 2005).[4]  Pursuant to the ADRA, the court reviews procurement decisions under the standards set forth in § 706 of the Administrative Procedure Act (APA), that is, whether the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  28 U.S.C. §§ 1491(b)(1), 1491(b)(4); 5 U.S.C. §§ 702, 706(2)(A); see <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u> (<u>Impresa</u>), 238 F.3d 1324, 1332 (Fed. Cir. 2001).

---

[4]RCFC 56.1, to which <u>Bannum, Inc. v. United States</u>, 404 F.3d 1346, 1353-56 (Fed. Cir. 2005) refers, was replaced by RCFC 52.1.  RCFC 52.1 Rules Comm. Note (2006).

5

"[T]he court implements this APA standard by applying the standard as previously interpreted by the district court[] in [Scanwell Labs., Inc. v. Shaffer (Scanwell), 424 F.2d 859 (D.C. Cir. 1970)]."[5]  Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004).

The Federal Circuit has stated that, under the APA standard applied in Scanwell, and now under the ADRA, "'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'"  Banknote, 365 F.3d at 1351 (quoting Impresa, 238 F.3d at 1332).  When challenging a procurement on the ground of a regulatory violation, the protester "must show a clear and prejudicial violation of [the] applicable statutes or regulations."  Id. (quoting Impresa, 238 F.3d at 1333).  The protester must also "show that there was a 'substantial chance' [that] it would have received the contract award absent the alleged error."  Id. (quoting Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2001)).

RCFC 12(b)(1) governs dismissal of claims for lack of subject matter jurisdiction.  RCFC 12(b)(1).  When a defendant challenges this court's jurisdiction pursuant to RCFC 12(b)(1), the plaintiff bears the burden to show by a preponderance of the evidence that jurisdiction is proper.  Reynolds v. Army & Air Force Exch. Serv. (Reynolds), 846 F.2d 746, 748 (Fed. Cir. 1988).  In evaluating a claim pursuant to RCFC 12(b)(1) for lack of jurisdiction over the subject matter, the court must accept as true any undisputed allegations of fact made by the non-moving party and draw all reasonable inferences from those facts in the non-moving party's favor.  Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); Reynolds, 846 F.2d at 747.  If the motion to dismiss for lack of subject matter jurisdiction disputes the jurisdictional facts, a court may consider other relevant evidence to resolve the factual dispute.  Reynolds, 846 F.2d at 747; see Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999).  In this case, the contested "jurisdictional facts" are better characterized as mixed questions of law and fact, in which questions of law predominate, discussed in Part III.A, below.

III.    Discussion

    A.    Jurisdiction

---

[5] In Scanwell Labs., Inc. v. Shaffer (Scanwell), 424 F.2d 859, 874-75 (D.C. Cir. 1970), the Court of Appeals for the District of Columbia Circuit court upheld the district court's review of government procurement decisions under the Administrative Procedure Act (APA).  See Scanwell, 424 F.2d at 874-75.

Plaintiff argues that the court has subject matter jurisdiction under 28 U.S.C. § 1491(b) "because the SBIR Phase II award at issue here is a procurement." Pl.'s Post-Argument Br. 5; see also Compl. 2. The primary issue regarding jurisdiction is whether plaintiff's contention, that the SBIR Phase II award it sought "is a procurement," Pl.'s Post-Argument Br. 5, is correct such that plaintiff has stated a claim arising "in connection with a procurement or a proposed procurement," 28 U.S.C. § 1491(b)(1), for government acquisition of property or services, see also 41 U.S.C. § 403(2), for purposes of the jurisdiction of the court. Notwithstanding the potentially dispositive nature of the issue, the parties – most surprisingly the government, the filer of the motion raising the issue – addressed the issue in a conclusory fashion in their pre-argument briefing. Defendant merely stated that "the Army's SBIR program does not involve an 'award' of a procurement contract." Def.'s Reply 3. At oral argument and, at the request of the court, see Order of May 14, 2007, in their post-argument briefs, the parties presented arguments specific to the issue of whether the SBIR Phase II program involves a procurement for purposes of the court's jurisdiction under 28 U.S.C. § 1491(b).

At oral argument, plaintiff argued that the SBIR program qualifies as a competitive procurement solicitation because it involves the "acquisition of research and development." May 14, 2007 Oral Argument Transcript (Tr.), 8:14-22. Plaintiff also points out that this court has previously assumed jurisdiction over claims that the government violated procurement law by failing to make an SBIR award. Pl.'s Post-Argument Br. 2 (citing Compubahn, Inc. v. United States (Compubahn), 33 Fed. Cl. 677 (1995) and Night Vision Corp. v. United States (Night Vision I), 68 Fed. Cl. 368, 392 (2005)). Defendant does not specifically respond to the applicability of Compubahn in its post-argument briefing. Def.'s Post-Argument Br. passim.

In Compubahn, the plaintiff filed suit seeking damages for breach of implied contract and breach of implied covenant of good faith and fair dealing when it was not selected for an SBIR Phase I award. 33 Fed. Cl. at 680. The parties filed cross-motions for summary judgment pursuant to RCFC 56. Id. at 679. The court, exercising its pre-ADRA bid protest jurisdiction, see Compubahn, 33 Fed. Cl. at 681, assumed jurisdiction over the plaintiff's claim on the basis that the plaintiff pleaded that there was "an implied contract between plaintiff and defendant by virtue of defendant's solicitation for candidates to submit a proposal for the development of . . . technology." Id. at 680. With regard to the plaintiff's claim for bid protest and preparation costs, the court noted that "the government . . . is bound by an implied contractual duty to fairly and responsibly consider all responsive bids when it issues a solicitation." Compubahn, 33 Fed. Cl. at 681 (citing United States v. John C. Grimberg Co., 702 F.2d 1362, 1367 n.8 (Fed. Cir. 1983)). The court in Compubahn then analyzed whether the "government acted arbitrarily and capriciously toward the bidder in the selection process." Compubahn, 33 Fed. Cl. at 682.

7

The court found that no "arbitrary or capricious decision-making occurred during the procurement process," id. at 683, and granted the government's motion for summary judgment, id. at 684.  The court does not perceive how an exercise by this court of its pre-ADRA bid protest jurisdiction could be determinative of this case.

In Night Vision I, a post-ADRA case, the plaintiff was selected for SBIR Phase I and Phase II awards, but did not receive an SBIR Phase III award.  68 Fed. Cl. at 370.  The dispute in Night Vision I involved a competitive procurement in addition to and separate from the SBIR Phase III award process.  Id.  Plaintiff sought relief on five counts, including breach of a statutory provision allegedly incorporated into its SBIR Phase I and II award documents and a breach of an implied contract (when the defendant did not award plaintiff a Phase III grant), violation of the duty of good faith and fair dealing owed during the procurement process, and a bid protest of the non-SBIR competitive procurement contract awarded to another bidder.  Id. at 370-371.  The plaintiff in Night Vision I argued that, because it was awarded and successfully completed the obligations of an SBIR Phase II grant and because 15 U.S.C. § 638(j)(2)(C) "was incorporated by operation of law into the parties' Phase II contract," plaintiff was then entitled to received an SBIR Phase III grant.  Id. at 383.  With regard to the government's failure to make an SBIR Phase III award, the Night Vision I court held that 15 U.S.C. § 638(j)(2)(C), the portion of the SBIR statute the plaintiff sought to incorporate into its Phase II award contract, "imposes no obligation or duty on either party to the contract," id. at 371, 383, and that plaintiff failed to demonstrate that there was an oral contract to make a Phase III award, id. at 371, 384-85.  After addressing the parties' cross-motions for summary judgment pursuant to RCFC 56, defendant's motion to dismiss the plaintiff's claims regarding an alleged implied contract, and the parties' cross-motions for judgment on the administrative record with regard to the bid protest claim, the court ultimately rejected all of the plaintiff's claims and found for the defendant.  Id. at 371.

Regarding jurisdiction, the court stated in Night Vision I that it had "jurisdiction over plaintiff's express contract, implied contract, and bid protest claims under the Tucker Act, which confers jurisdiction on this court for claims against the United States founded on 'an express or implied contract' and for 'actions by an interested party objecting to . . . the award of a contract' by a federal agency."  Id. at 377 (alteration in original) (quoting 28 U.S.C. § 1491(a)(1), (b)(1) and United States v. Testan, 424 U.S. 392, 397 (1976)).  In its opinion on appeal upholding this court's decision to dismiss the plaintiff's case for failure to state a claim, the Court of Appeals for the Federal Circuit did not address the jurisdiction of the Court of Federal Claims.  Night Vision Corp. v. United States (Night Vision II), 469 F.3d 1369 (Fed. Cir. 2006).

The court does not agree that Night Vision I supports the contention that the court has jurisdiction over an SBIR Phase II award. An SBIR Phase II award was not in dispute. Night Vision I, 68 Fed. Cl. at 370. The court in Night Vision I dismissed, under RCFC 12(b)(6), the plaintiff's claim that failure to award an SBIR Phase III grant is a breach of a statutory provision because it determined that the statutory provision on which the plaintiff relied, 15 U.S.C. § 638(j)(2), does not impose a contractual obligation. Id. at 371. Furthermore, Night Vision I also involved contract allegations and a competitive procurement apart from the SBIR program that provided bases for the court in Night Vision to assume jurisdiction over plaintiff's claims. Plaintiff here claims unfair treatment when it was not awarded a Phase II grant. Here, plaintiff makes no allegations of contractual obligations beyond those that hang on the assertion that the SBIR Phase II award program is a procurement; there is no SBIR Phase III award involved in this case; and there is no competitive procurement beyond or apart from the SBIR program.

In addition to its arguments based on case law, plaintiff argues that the language employed in the SBIR grant process supports the view that the process is a competitive procurement. In particular, plaintiff draws attention to the presence of a Source Selection Plan and Technical Evaluation Teams. Pl.'s Post-Argument Br. 5  Plaintiff contends that "[t]he intended result of the Phase II proposal consideration . . . is an actual contract for research services." Id.  Plaintiff notes that the Phase II Program Solicitation "specifically states that 'each Phase II proposal selected for award will be funded under a negotiated contract." Id. (citing AR 81).

The court agrees that the program uses much of the language of procurement, but disagrees with the conclusion that the use of such language results in a procurement within the jurisdiction of the court under 28 U.S.C. § 1491(b). As correctly noted by defendant, the SBIR's implementing statute states that congressional policy is to provide "assistance . . . to small-business concerns to enable them to undertake and to obtain the benefits of research and development in order to maintain and strengthen the competitive free enterprise system and the national economy." 15 U.S.C. § 638(a); Def.'s Post-Argument Br. 9. The statute does not mention "procurement" or a purpose of obtaining property or services through a competitive contract process as a purpose of the SBIR program. See 15 U.S.C. § 638. Moreover, the congressional findings and purposes indicate that the SBIR program purposes are: "1) to stimulate technological innovation; 2) to use small business to meet Federal research and development needs; 3) to foster and encourage participation by minority and disadvantaged persons in technological innovation; and 4) to increase private sector commercialization innovations derived from Federal research and development." Small Business Innovation Development Act of 1982, Pub. L. No. 97-219, 96 Stat. 217 (1982).

9

The Source Selection Plan, on which plaintiff heavily relies, itself undermines plaintiff's argument. Although one of the purposes mentions meeting federal research and development needs, the Source Selection Plan for the SBIR Phase II program through which R&D sought an award makes clear that it is not intended to be a program that procures services. AR 10 (Source Selection Plan). The Source Selection Plan states in plain language that the SBIR award program is not a procurement.

> <u>Topics will solicit R&D and not procurement</u>. The distinction is that R&D projects involve technical risk – i.e., technical feasibility has not yet been established. Procurement projects, by contrast, do not involve technical risk – i.e., technical feasibility has been fully established.

<u>Id.</u> (emphasis in original). The Source Selection Plan also points out that a Phase III award may lead to a competitive procurement, as was the case in <u>Night Vision I</u>, 68 Fed. Cl. at 370, through the assistance and development gained in participating in the earlier phases of the SBIR program. AR 14-15.

It is also true, as plaintiff argues, that the administrative record demonstrates that the "SBIR program follows the traditional competitive procedures typically followed in a negotiated procurement under FAR Part 15," particularly in FAR § 15.303. Pl.'s Post-Argument Br. 5. However, no FAR provisions apply specifically to the SBIR award program. <u>See</u> 48 C.F.R. §§ 19.000-19.1407. While the SBIR award program involves procedures similar to those used in competitive procurements, the use of procedures analogous to those used in competitive procurements does not create a competitive procurement when the purpose of the activity is to "solicit R&D and not procurement." AR 10 (Source Selection Plan) (emphasis omitted).

Plaintiff also argues that the court's "protest jurisdiction is similar to the protest jurisdiction of the Government Accountability Office, which has jurisdiction to consider, among other things, the award or proposed award of 'a contract for the procurement of property or services.'" Pl.'s Post-Argument Br. 3 (citing 31 U.S.C. §§ 3551, 3552). Plaintiff points out that the GAO has routinely determined that it has jurisdiction over protest actions related to the SBIR program including Phase II awards. <u>See id.</u> at 3-4. Plaintiff cites several GAO decisions and argues that "[b]ased on [its] review of the case law, GAO has never refused subject matter jurisdiction over an SBIR protest and, by our count, has decided 35 such protests beginning in 1984." <u>Id.</u> at 4. Plaintiff also argues that "[b]y contrast, GAO has denied subject matter jurisdiction over 'cooperative agreements,' among other types of agreements." <u>Id.</u> (citation omitted).

GAO decisions are not determinative of this court's jurisdiction. The bid protest jurisdiction of the GAO and of the court are governed by different statutes. <u>Compare</u> 28

10

U.S.C. § 1491(b) with Competition in Contracting Act (CICA), 31 U.S.C. § 3551. Although in American Federation of Government Employees, AFL-CIO v. United States (AFGE), 258 F.3d 1294, 1302 (Fed. Cir. 2001), the Federal Circuit "construe[d] the term 'interested party' in § 1491(b)(1) in accordance with [CICA, 31 U.S.C. §§ 3551-56]," this construction was limited to the issue of addressing the scope of the term "interested party." AFGE, 258 F.3d at 1302.

Plaintiff also points out that the GAO has found that it has jurisdiction over SBIR Phase I award protests "because the SBIR program involved solicitation by 'competitive procedure' as that term is defined at 10 U.S.C. § 2302(2)(E)." Pl.'s Post-Argument Br. 3-4 (citing, inter alia, Twentyfirst Century Tech. Innovations Research and Dev. Enterprising, B-2251579, Mar. 17, 1987, available at 1987 U.S. Comp. Gen. LEXIS 1439). The court agrees that the SBIR program could be described in a non-technical way as a "competitive procedure." However, that observation is not determinative of the jurisdiction of this court. Even if the SBIR program involves a "competitive procedure," the court does not find that the SBIR program's competitive procedures involve a contract for "procurement" for purposes of the 28 U.S.C. § 1491(b). The SBIR Phase II program appears to the court instead to be of a developmental nature. The resources expended by the government in Phase II of the SBIR program may ultimately lead to the development of a capacity to provide goods or services in Phase III, see AR 14-15, but, based on the stated purpose of the statute creating the program and the Source Selection Plan, the court does not find that a procurement occurs in Phase II of the SBIR program. Absent a "connection with a procurement or a proposed procurement," 28 U.S.C. § 1491(b)(1), the court lacks jurisdiction under the ADRA.

      B.    Standing

If the court attempts to view the SBIR Phase II program as a procurement, a plaintiff's standing "is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." AFGE, 258 F.3d at 1302. A protestor must demonstrate that it was prejudiced by the award in order for a protestors' direct economic interest to be affected. Info. Tech. & Applications Corp. v. United States (Info. Tech.), 316 F.3d 1312, 1319 (Fed. Cir. 2003). A protestor is prejudiced by the award if it would have had a substantial chance of obtaining the contract. Id.; Myers Investigative and Sec. Servs. v. United States, 275 F.3d 1366, 1369-70 (Fed. Cir. 2002). The court, for reasons of judicial economy and efficiency, addresses the parties' arguments regarding whether plaintiff has standing as an interested party, assuming arguendo a bid protest context.

Plaintiff argues that it has standing as an interested party because it can show that plaintiff's "direct economic interest would be affected by the award of the contract or by

failure to award the contract." Pl.'s Reply 2 (quoting AFGE, 258 F.3d at 1302). In its reply, defendant notes that the Army had funding for only the first 19 proposals on the list, and R&D Dynamics's proposal was 24th on the list. Def.'s Mot. 11. In addition, two documents in the administrative record indicate that plaintiff's proposal was ranked 21st on the list. AR 156, 315.

In typical bid protest scenarios, courts have looked to whether the protestor was "within the zone of active consideration" to determine whether a protestor had a substantial chance of obtaining the award. Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting CACI, Inc.-Fed. v. United States, 719 F.2d 1567, 1574-75 (Fed. Cir. 1983)). Plaintiff has the burden to demonstrate that it was "within the zone of active consideration." Id. It appears to the court that, regardless of whether plaintiff's proposal was ranked 21st or 24th, plaintiff has not carried its burden.

Plaintiff has not demonstrated, on the basis of the administrative record, that plaintiff's proposal actually had a substantial chance of being ranked above one of the 19 other proposals that were selected for a Phase II award. Each proposal was individually evaluated in a three-tiered process by evaluators with extensive knowledge and expertise of the particular scientific field. The court cannot, based on plaintiff's arguments, determine that plaintiff's proposal meets the particular scientific and technical evaluation criteria. While the SBIR program involves a "competitive process," plaintiff's proposal did not compete with the other proposals. Rather, plaintiff's proposal was evaluated by a group of four evaluators who did not evaluate any of the other proposals in the propulsion technology area. AR 316-26.

In some cases, courts have determined that a protestor does not have a "substantial chance" of obtaining a contract, Info. Tech., 316 F.3d at 1319, 1) if the contractor did not submit a proposal, 2) the bidder withdrew from the competitive procurement, or 2) the protestor's proposal was ranked lower than second after the evaluation of all proposals, Impresa, 238 F.3d at 1334 (citations omitted). The Federal Circuit noted that in those cases "the bid protester had no economic interest in the outcome since, if the protest were successful, the award would go to another party." Id. Here, even if plaintiff could demonstrate a defect in the award process prejudicial to it, it is not next in line for award, and might be as far back as fifth in line. Additionally, plaintiff has no direct competitors with whose proposals plaintiff's proposal can be judged against a single set of standards, such as the terms of a solicitation. Plaintiff cannot in this circumstance, and does not, explain why it should be entitled to an award as against any other "competitor." It may have an economic interest, but it is not in a position to demonstrate – and it has not explained how it could demonstrate – that it would be entitled to an SBIR Phase II award in place of any other applicant for award in the SBIR Phase II program. The reason for this failure, the court concludes, is that plaintiff's proposal does not seek to provide goods

or services to fill a defined need of the government. The SBIR Phase II program is not a procurement.

    C.    Supplementing the Administrative Record

When deciding a motion for judgment on the administrative record, the court focuses its review on "the administrative record already in existence." Camp v. Pitts, 411 U.S. 138, 142 (1973). However, "[a]s a practical matter . . . , in most bid protests, the 'administrative record' is something of a fiction," Cubic Applications, Inc. v. United States, 37 Fed. Cl. 345, 350 (1997), because it "is not a documentary record maintained contemporaneously with the events or actions included in it," Tech Sys., Inc. v. United States, 50 Fed. Cl. 216, 222 (2001). Therefore, in certain circumstances, such as if supplementation is "required for meaningful judicial review," Impresa, 238 F.3d at 1338, the court will supplement the administrative record, Precision Standard, Inc. v. United States, 69 Fed. Cl. 738, 745 (2006).

Plaintiff objects to the late admission of tabs 29 and 30 of the Administrative Record because they were not "part of the administrative record before the GAO and were never identified as being contemporaneous documentation of the evaluation and ranking of the R&D proposal." Pl.'s Resp. 9-10. Plaintiff requests that these exhibits be stricken or, in the alternative, that it be allowed "sufficient time for discovery to examine the authenticity and foundation of these documents." Id.

Plaintiff's concerns regarding the authenticity and foundations of the documents contained at Tab 29 and 30 are addressed in the certification of the administrative record filed pursuant to RCFC 52.1(a). In the certification, LTC Kenneth W. Strayer, Deputy Program Manager, Army Small Business Innovation Research, certified that the documents contained at Tabs 1-15 and Tabs 29-30 "constitute the record of administrative actions performed by the Army concerning R&D Dynamics' SBIR Phase II [P]roposal for Topic A05-035."[6] Defendant's Notice of Filing Pursuant to the Court's May 14, 2007 Order (Def.'s Notice) Attach. 1. The court does not believe that, in the absence of some specific and well-supported reason to challenge the certification by LTC Strayer, plaintiff

---

[6]In the Certification of the Administrative Record (Certification), Def.'s Notice (containing the certification at Attachment 1), LTC Kenneth W. Strayer, states that "[t]he documents at Tabs 16-28 relate to R&D Dynamics' GAO protest concerning its SBIR proposal for Topic A035-35" and "[t]he Army does not consider the GAO documents part of the administrative record as it relates to the evaluation of R&D Dynamics' Phase II SBIR [P]roposal," id. The Certification states that documents contained at Tab 32 "are not part of the record concerning the evaluation of R&D Dynamics' Phase II SBIR [P]roposal for Topic A05-035." Id.

is entitled to discovery about the "authenticity and foundation of these documents," Pl.'s Resp. 10, added to the administrative record. Nor does the fact that the documents were or were not included in a record at GAO govern their admissibility in this proceeding.

Defendant noted its objection to supplementing the administrative record with documents now (now contained at Tab 32 of the AR) concerning the SBIR Phase I award to plaintiff. Def.'s Notice 1. Defendant argues that plaintiff's present claim does not relate to the SBIR Phase I award and that these documents "were not evaluated by the Army in the course of its review of [plaintiff's] SBIR Phase II proposal." Id. Plaintiff's present claim does request review of plaintiff's receipt of an SBIR Phase I award. Compl. passim. However, plaintiff's complaint stated that it "received an SBIR Phase I grant for its research relating to foil face seal technology." Compl. 4. Therefore, this information merely completes the record by demonstrating that plaintiff did in fact receive an SBIR Phase I award. Defendant's documents simply provide a slightly more complete record than was available to the GAO and appear to the court to "complete" the administrative record rather than "supplement" it. Plaintiff's and defendant's objections to supplementation of the administrative record are, for the foregoing reasons, OVERRULED.

### D.   Declaratory and Injunctive Relief

Plaintiff is not entitled to injunctive relief. To obtain injunctive relief, plaintiff must succeed on the merits of a bid protest claim. PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004). However, plaintiff's claim is not a bid protest because the court finds that plaintiff's claim does not arise "in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1). Injunctive relief is not an available in a non-bid protest context.

## IV.   Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the record is DENIED and defendant's motion to dismiss is GRANTED. The Clerk of the Court shall ENTER JUDGMENT dismissing plaintiff's claim.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge